IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN WESLEY BUCKHANAN, | CASE NO. CV-F-03-6749 LJO |
| Plaintiff, | **SUMMARY JUDGMENT/ADJUDICATION DECISION** |
| vs. | (Docs. 35, 42, 44.) |
| OFFICER RICHARD JAMES FISHER, et al., | |
| Defendants. | |

## INTRODUCTION[1]

Defendants City of Ceres ("City"), City police chief Art DeWerk ("Chief DeWerk") and City police officer Darren Venn ("Officer Venn") seek summary judgment/adjudication on plaintiff John Wesley Buckhanan's ("Mr. Buckhanan's") 42 U.S.C. § 1983 ("section 1983") and related excessive force claims. The City, Chief DeWerk and Officer Venn (collectively "defendants") base their summary judgment/adjudication motion chiefly on deemed admissions resulting from Mr. Buckhanan's failure to respond timely to defendants' requests for admission. Defendants set an April 15, 2005 hearing for their summary judgment/adjudication decision.

Late in the afternoon of April 14, 2005, Mr. Buckhanan filed his motions to withdraw the

---

[1] Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by an January 22, 2004 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings.

1

1  deemed admissions and to amend his first amended complaint to address what his counsel characterizes
2  as Mr. Buckhanan's lack of mental capacity. This Court conducted an April 15, 2005 hearing on
3  defendants' summary judgment/adjudication motion. Mr. Buckhanan appeared by counsel Mark J.
4  Alexander, Law Office of Mark J. Alexander. Defendants appeared by counsel Erik L. Lund, Ferguson,
5  Praet & Sherman.

This Court construed Mr. Buckhanan's motions to withdraw deemed admissions and to amend his first amended complaint as a F.R.Civ.P. 56(f) motion for further discovery to oppose summary judgment/adjudication. This Court issued its April 21, 2005 order to grant Mr Buckhanan up to May 13, 2005 to present further evidence to address Mr. Buckhanan's mental capacity and failure to timely respond to defendants' requests for admission. On May 13, 2005, Mr. Buckhanan filed papers to respond to the April 21, 2005 order and included reports from a neuropsychologist.

Based on review of the record, this Court concludes Mr. Buckhanan has failed to substantiate withdrawal of the deemed admissions and GRANTS defendants summary judgment.

## BACKGROUND

### Mr. Buckhanan's Claims

Mr. Buckhanan proceeds on his first amended complaint to allege that during the late evening of January 29, 2003 or early morning of January 30, 2003, defendant City police officer Richard James Fisher ("Officer Fisher")[2] stopped Mr. Buckhanan as Mr. Buckhanan rode his bicycle, put his service revolver to Mr. Buckhanan's head, pulled the revolver's hammer back and told Mr. Buckhanan he was going to kill him. The first amended complaint further alleges:

> Officer Fisher, without provocation, knocked Plaintiff to the ground and struck Plaintiff in the face with the pistol causing Plaintiff to loose his front teeth. Ceres Police Officer and Defendant Darren Venn was present during the events described above, but did nothing to prevent his partner Defendant Fisher from threatening Plaintiff with a pistol and did nothing to prevent the pistol whipping of Plaintiff by Officer Fisher. Plaintiff presented no danger to the above-named Officers who acted deliberately, intentionally, maliciously, without justification and knowingly and willfully violating Plaintiff John Wesley Buchkanan's constitutional rights.

The first amended complaint further alleges Mr. Buckhanan signed a January 30, 2003

---

[2] Officer Fisher has not appeared in this action. This Court's May 17, 2004 order granted publication of summons as to Officer Fisher. On July 9, 2004, Mr. Buckhanan's counsel filed his declaration of publication of summons.

1  Settlement Agreement to settle claims arising from the incident for $500 and dental work to fix his front
2  teeth. The Settlement Agreement, attached as an exhibit to the first amended complaint, states that Mr.
3  Buckhanan acknowledges that the "City has informed him of his right to seek legal counsel prior to
4  signing this Settlement Agreement and that he signs this Settlement Agreement voluntarily with full
5  understanding of each and every term of this Settlement Agreement and a knowing waiver of the right
6  to counsel." The Settlement Agreement further provides that Mr. Buckhanan "states that he has
7  carefully read the foregoing Settlement Agreement and knows the contents thereof and signs the said
8  of his own free act and will."

As to the Settlement Agreement, the first amended complaint alleges Mr. Buckhanan "was afraid that he would not be permitted to leave until he signed the agreement, he was not permitted to make any telephone calls to anyone and was not permitted the advice of any attorney. Further he was taken to the police station by uniformed and non-uniformed police officers, threatened by their manner and comments with potential criminal prosecution and was afraid for his own safety and freedom at the time he signed the agreement." The first amended complaint continues to allege Mr. Buckhanan "thought that the only way to regain his freedom would be if he complied with the wishes of the officers and lawyers present by signing the agreement. He did not understand the agreement he was signing and did not realize that he was being asked to give up all of his claims against the City for the injuries caused by the Ceres Police Officer who pistol whipped him."

The first amended complaint alleges:

1. A section 1983 (first) cause of action that defendants and Officer Fisher violated Mr. Buckhanan's Fourth and Fourteenth Amendment rights by subjecting Mr. Buckhanan "to excessive and unreasonable force, thereafter covering up this act and depriving Plaintiff of his right to recover for his damages";

2. A section 1983 "custom policy and practice" (second) cause of action that defendants and Officer Fisher promulgated and enforced "local policies, customs and administrative practices and usages in violation of the Fourth and Fourteenth Amendments to the United States Constitution" which "required and encouraged" retention of Officer Fisher "who individually has a propensity for violence, dishonesty, bigotry, racism, filing false

      reports, doing incomplete investigations and additional abuses of his (their) duties in the employment of the Ceres Police Department";

3. An assault and battery (third) cause of action against Officers Fisher and Venn; and

4. A rescission (fourth) cause of action against defendants and Officer Fisher to rescind the Settlement Agreement.

This Court has bifurcated Mr. Buckhanan's rescission claims from the remainder of issues.

## Deemed Admissions

On November 29, 2004, defendants propounded requests for admission to Mr. Buckhanan, who was granted an initial extension to January 13, 2005 to provide responses. Mr. Buckhanan requested and was granted a second extension to January 21, 2005. Mr. Buckhanan requested and was granted a final (third) extension to February 4, 2005. With his March 4, 2005 letter to Mr. Buckhanan's counsel, defense counsel stated that all requests for admission "are now deemed admitted pursuant to Rule 36(a)."

Based on Mr. Buckhanan's failure to respond to defendants' requests for admission, defendants contend the following facts, subject to their requests for admission, are deemed admitted and undisputed for summary judgment/adjudication[3]:

1. Prior to signing the Settlement Agreement on January 30, 2003, Mr. Buckhanan:
   a. "[R]ead and fully understood the entire Settlement Agreement";
   b. Was told he "could use the telephone to call an attorney" and that he "could leave";
   c. "[V]oluntarily waived [his] right to an attorney";
   d. Was "told and understood that [he was] giving up any and all rights to sue the City of Ceres and/or the officers in either State or Federal Court";
   e. "[S]tated that [he] understood that [he was] giving up [his] right to sue by signing the Settlement Agreement"; and
   f. "[S]tated that [he] wanted [his] teeth fixed and that was all [he] cared about."

2. Mr. Buckhanan "voluntarily stayed at the Ceres Police Department and signed the

---

[3] The quoted portions are taken directly from defendants' requests for admission.

4

1         Settlement Agreement."

2     3.    Mr. Buckhanan "voluntarily gave up [his] right to sue the City of Ceres and/or the officers in either State or Federal Court" and "voluntarily signed a Settlement Agreement relieving the City of Ceres and the officers of all liability."

5     4.    "[O]n January 30, 2003, [Mr. Buckhanan] accepted $500.00 from the City of Ceres."

6     5.    Mr. Buckhanan "spent the entire $500.00 [he] accepted from the City of Ceres."

7     6.    Mr Buckhanan "agreed to dental treatment offered by the City of Ceres at no cost to [him]."

9     7.    Mr. Buckhanan was "not forced, coerced or threatened into accepting the terms of the Settlement Agreement."

11     8.    "[A]ll dealings between [Mr. Buckhanan], the City of Ceres and its representatives were fair, non-coercive and without any undo advantage."

13     9.    Mr. Buckhanan "suffered no financial or economic loss as a result of this incident."

14     10.   "[T]he consideration [Mr. Buckhanan] agreed to in the Settlement Agreement was fair and adequate compensation for any and all injuries [he] claim[s] in this lawsuit."

Defendants contend that the deemed admissions establish "that the Settlement Agreement is valid and that it was voluntary, deliberate and informed" to warrant dismissal of Mr. Buckhanan's rescission (fourth) cause of action and in turn his three other causes of action. In his declaration, defense counsel states:

    1.    At the time Mr. Buckhanan signed the Settlement Agreement, he "was not in custody nor had he been arrested, and no criminal complaint was filed or pending against him."

    2.    "Before signing the Settlement Agreement, Plaintiff clearly stated that he understood that the Settlement Agreement would be a full release of all claims, including any state and federal civil claims against the City of Ceres, its officers and the officer involved in the alleged incident"

    3.    "I informed plaintiff of his right to seek legal counsel before signing the Settlement Agreement, however, he voluntarily agreed that he did not require the assistance of an attorney."

4. "Plaintiff was also given an opportunity to call an attorney before executing the Settlement Agreement, only he freely declined that too."

5. "Before signing the Settlement Agreement, Plaintiff confirmed that he read and fully understood the entire agreement."

6. "Plaintiff was jovial and unequivocally stated that he entered into the Settlement Agreement freely and voluntarily."

### Mr. Buckhanan's Last Minute Motions

Late in the afternoon on the day prior to the hearing on defendants' summary judgment motion, Mr. Buckhanan filed his motions to withdraw the deemed admissions and to amend his first amended complaint and set a May 13, 2005 hearing. Mr. Buckhanan's counsel contends that at the time of the events at issue, Mr. Buckhanan "was an adolescent addicted to street drugs with a recognized learning disability who never finished High School. Due to his medical conditions, [Mr. Buckhanan] lacked contractual capacity to sign away his rights . . . . Moreover, [Mr. Buckhanan's] neglect in response to discovery is due to the same condition." With his papers, Mr. Buckhanan submitted proposed responses to defendants' requests for admission, many of which indicate that Mr. Buckhanan does not recall and lacks information to admit or deny the requests for admission. Mr. Buckhanan's counsel arranged an evaluation of Mr. Buckhanan by Randall C. Epperson, Ph.D. ABPP ("Dr. Epperson"), a clinical neuropsychologist, to address Mr. Buckhanan's mental condition.

At the April 15, 2005 hearing, Mr. Buckhanan's counsel acknowledged "no excuse" of untimely responses to defendants' requests for admission and claimed that until April 8, 2005, he could not meet with Mr. Buckhanan who has a drug problem and potential learning disability. According to Mr. Buckhanan's counsel, there are factual issues whether Mr. Buckhanan had mental capacity to act for himself and to verify discovery responses.

This Court construed Mr. Buckhanan's motions to withdraw deemed admissions and to amend his first amended complaint as a F.R.Civ.P. 56(f) motion for further discovery to oppose summary judgment/adjudication. This Court issued its April 21, 2005 order to grant Mr Buckhanan up to May 13, 2005 to present further evidence to address Mr. Buckhanan's mental capacity and failure to timely respond to defendants' requests for admission.

6

**Mr. Buckhanan's Further Evidence**

In response to the April 21, 2005 order, Mr. Buckhanan filed Dr. Epperson's May 12, 2005 reports following Dr. Epperson's April 28, 2005 examination of Mr. Buckhanan. Dr. Epperson attributes Mr. Buckhanan as stating that Mr. Buckhanan did not recall the incident with Officer Fisher and that Mr. Buckhanan "was on methamphetamine" when he signed the Settlement Agreement. Dr. Epperson further noted:

> When I asked him if he understood the document he said "kinda sorta, I don't know, I'm kinda lost" with reading. He nevertheless took the $500 and signed the last page of the document. He "kinda sorta" read it. . . . They talked to him but he does not remember what they said. "I just want to forget it." He was acutely uncomfortable and wanted to leave so he signed the paper, took the $500, and left.

According to Dr. Epperson, Mr. Buckhanan suffered from Attention Deficit Hyperactivity Disorder ("ADHD") as a youth and has an abusive alcohol and methamphetamine history. Dr. Epperson found that Mr. Buckhanan's intellectual level "appeared below average" and "[t]here was mild pressure suggestive of adult ADHD." Dr. Epperson noted that Mr. Buckhanan's full scale IQ of 84 "is below average." Dr. Epperson diagnosed ADHD, combined effect, Cognitive Disorder NOS (slowed mental processing, impaired learning curve, deficits in executive/frontal functions), Reading Disorder (dysphonetic dyslexia pattern), amphetamine abuse, in partial remission per self report, and Personality Disorder NOS, with anti-social features.

After summarizing Mr. Buckhanan's background and his version of events at issue, Dr. Epperson concluded:

> In my opinion he was incapable of understanding the settlement agreement, which was not read to him but which he was asked to read himself. Current testing shows a low average IQ, reading at the 4th grade level for words he knows, and at the 2:9 level for words he does not know. In my opinion a man who is incapable of reading "a windstorm is making a ruin of the cottage" is not capable of understanding legal phrases in the agreement he signed . . . Asking him if he understood what he read in no way established that he did understand it.
>
> . . . In my opinion the average person with a 4th grade reading level will not understand what this agreement means, and would be induced to sign it only by promises, not be true understanding.

To address issues raised in this Court's April 21, 2005 order, Dr. Epperson noted Mr. Buckhanan's "reading deficit would be apparent to a non-expert if he/she asked him to paraphrase or explain what he read. If he is asked only if he understood the material he would likely say he did,

7

whether or not he actually did." Dr. Epperson noted a legal guardian for Mr. Buckhanan "is not necessary." Dr. Epperson further opined;

> . . . Mr. Buckhanan did not have contractual capacity to read and understand the settlement agreement he signed . . . [H]e had a specific deficit in alertness and attention (ability to attend and concentrate) due to his ADHD, ingestion of methamphetamine, and emotional duress of being in the presence of uniformed police officers after having been injured the night before. . . . He impulsively and abruptly acts without forethought and without understanding the consequences of his actions.

Dr. Epperson further noted Mr. Buckhanan's "brain-based deficits further interfered with his ability to comply with Court requirements such as discovery and filing. His ADHD makes it hard for him to follow through on tasks. He gets derailed. He is forgetful. His condition makes it hard for him to read and understand and deal with paperwork."

## DISCUSSION

### Summary Judgment/Adjudication Standards

F.R.Civ.P. 56(b) permits a party against whom a claim is asserted to seek "summary judgment in the party's favor upon all or any part thereof." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of

1  the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986);
2  *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient
3  disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as
4  a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

5        To carry its burden of production on summary judgment/adjudication, a moving party "must
6  either produce evidence negating an essential element of the nonmoving party's claim or defense or
7  show that the nonmoving party does not have enough evidence of an essential element to carry its
8  ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210
9  F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d
10 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party
11 must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102;
12 *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts
13 are material. Only disputes over facts that might affect the outcome of the suit under the governing law
14 will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

15       "If a moving party fails to carry its initial burden of production, the nonmoving party has no
16 obligation to produce anything, even if the nonmoving party would have the ultimate burden of
17 persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.
18 "If, however, a moving party carries its burden of production, the nonmoving party must produce
19 evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d
20 at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material
21 fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*
22 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of
23 summary judgment, after adequate time for discovery and upon motion, against a party who fails to make
24 the showing sufficient to establish the existence of an element essential to that party's case, and on
25 which that party will bear the burden of proof at trial.") "But if the nonmoving party produces enough
26 evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan*
27 *Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence
28 necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the

1 parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Under F.R.Civ.P. 56(c), a summary judgment/adjudication motion, interlocutory in character, may be rendered on the issue of liability alone. "In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989).

As discussed below, Mr. Buckhanan fails to overcome the deemed admissions to defeat summary judgment.

### Deemed Admissions

Defendants contend that Mr. Buckhanan's failure to respond to defendants' requests for admissions constitute Mr. Buckhanan's admissions to warrant dismissal of Mr. Buckhanan's rescission (fourth) cause of action. F.R.Civ.P. 36(a) addresses requests for admission and provides in pertinent part:

> A party may serve upon any other party a written request for the admission . . . of the truth of any matters . . . set forth in the request that relate to statements or opinions of fact or of the application of law to fact . . .
>
> . . . The **matter is admitted unless**, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing . . ., the party to whom the request is directed **serves** upon the party requesting the admission **a written answer or objection addressed to the matter**, signed by the party or by the party's attorney. . . .  (Bold added.)

F.R.Civ.P. 36(a)'s purpose "is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." *Asea, Inc. v. So. Pac. Transportation Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981). "Failure to respond to requests for admissions results in automatic admission of the matters requested. . . . No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self executing." *Federal Trade Comm. v. Medicor LLC*, 217 F.Supp.2d 1048, 1053 (C.D. Cal. 2002). "The failure to respond to admissions can effectively deprive a party of the

opportunity to contest the merits of the case." *In re Carney*, 258 F.3d 415, 421 (5th Cir. 2001).

Facts deemed admitted because of failure to respond to requests for admission may support summary judgment. *Nick-o-Val Music Co., Inc. v. P.O.S. Radio, Inc.*, 656 F.Supp. 826, 828 (M.D. Fla. 1987). Since under F.R.Civ.P. 36(a) a request for admission may address "an application of law to fact," a request for admission may be on the ultimate issue in the case, e.g., whether a party was negligent, whether an accident is covered under an insurance policy, etc. 2 Schwarzer, Tashima & Wagstaffe, *Cal. Practice Guide: Fed. Civil Procedure Before Trial* (2005) Discovery, paras. 11:2006 and 11:2007, p. 11-243.

Despite receiving three extensions, Mr. Buckhanan served no timely responses to defendants' requests for admission to deem them admitted. With the deemed admissions, the key undisputed facts for summary judgment/adjudication are that Mr. Buckhanan:

1.  Understood he waived all rights to pursue claims against defendants;
2.  Voluntarily waived rights to pursue claims against defendants;
3.  Voluntarily signed the Settlement Agreement to relieve defendants of liability;
4.  Accepted the $500 and dental work as consideration to waive claims;
5.  Was not forced, coerced or threatened into accepting the Settlement Agreement; and
6.  Suffered no economic damages as a result of the events at issue.

In addition, the deemed admissions are that all dealings among Mr. Buckhanan, the City and its representatives were fair, non-coercive and without undo advantage and that the consideration to which Mr. Buckhanan agreed was fair and adequate to compensate Mr. Buckhanan for his alleged damages.

This Court is particularly troubled by the lack of diligence Mr. Buckhanan and his counsel to address the deemed admissions. Although Mr. Buckhanan claims he "has recently associated new counsel," Mr. Buckhanan filed a December 22, 2004 notice of association of counsel to reveal new counsel was on board prior to expiration of the original deadline to respond to defendants' requests for admission. Mr. Buckhanan's new counsel notes that when he first met with Mr. Buckhanan on April 8, 2005 and well after the requests for admission were deemed admitted, counsel realized based on Mr. Buckhanan's demeanor and communication difficulties that Mr. Buckhanan "must have some type of organic mental deficit." Despite such observations, Dr. Epperson finds no need for a legal guardian for

11

Mr. Buckhanan. Mr. Buckhanan has failed to satisfactorily resolve the issue that despite his mental deficiencies, he could not with counsel's assistance respond to simple discovery requests.

When Mr. Buckhanan and his counsel finally addressed defendants' requests for admission, they proposed responses to indicate that Mr. Buckhanan does not recall and lacks information to admit or deny requests for admission. If Mr. Buckhanan lacks information to admit or deny requests for admission, he in turn lacks sufficient evidence to defeat summary judgment. Without substantial justification, Mr. Buckhanan seeks to undo deemed admissions in which his lack diligence resulted. Even with Mr. Buckhanan's proposed responses, he admits that he:

1. Was told he could telephone an attorney prior to signing the Settlement Agreement;
2. Was told he was giving up rights to sue the City and its officers prior to signing the Settlement Agreement;
3. Was told he was giving up his right to sue by signing the Settlement Agreement;
4. Suffered neither financial nor economic loss as a result of the incident;
5. Stated, prior to signing the Settlement Agreement, he cared only about having his teeth fixed;
6. Agreed to dental treatment offered by the City; and
7. Accepted and spent the $500.

To oppose summary judgment, Mr. Buckhanan relies on Dr. Epperson's observations that when Mr. Buckhanan signed the Settlement Agreement, Mr. Buckhanan suffered from ADHD and had ingested methamphetamine (according to Dr. Epperson) to diminish Mr. Buckhanan's mental capacity. In his May 12, 2005 report, Dr. Epperson downplays Mr. Buckhanan's "low average IQ" and notes only Mr. Buckhanan's one-sided version of the events at issue. Mr. Buckhanan fails to provide his own, lawyer-assisted declaration to bolster that on which Dr. Epperson appears to rely.

Mr. Buckhanan relies on a transcription of a tape recording of January 30, 2003 settlement discussions and agreement with Mr. Buckhanan. Mr. Buckhanan claims "he lacked capacity, acted under duress and never read the entire agreement" and "disputed his presence was voluntary." Mr. Buckhanan further claims his "future damages are presently unknown; discovery is continuing." A review of the transcription reveals no issues regarding Mr. Buckhanan's capacity, duress or

misunderstanding and supports defendants' version of events.

**Release And Waiver Of Claims**

Defendants contend that Mr. Buckhanan's release and waiver of his claims subject to this action is valid and enforceable. The decision to bring a section 1983 action alleging police misconduct is confined "to the injured individuals, not to the public at large." *Town of Newton v. Rumery*, 480 U.S. 386, 395, 107 S.Ct. 1187 (1987) (plurality) (addressing a criminal defendant's agreement to release a section 1983 claim in return for prosecutor's dismissal of criminal charges). A "per se rule of invalidity" of release-dismissal agreements "fails to credit other relevant public interests and improperly assumes prosecutorial misconduct." *Newton*, 480 U.S. at 395, 107 S.Ct. 1187.

A release-dismissal agreement "is enforceable only if (1) it was entered into voluntarily; and (2) its enforcement is in the public interest." *Lynch v. City of Alhanbra*, 880 F.2d 1122, 1126 (9th Cir. 1989). When a release-dismissal agreement is "voluntary" and there is no evidence of prosecutorial misconduct, enforcement of a release-dismissal agreement "would not adversely affect the relevant public interests." *Newton*, 480 U.S. at 398, 107 S.Ct. 1187. A defendant bears the burden to prove "the agreement serves the public interest." *Lynch*, 880 F.2d at 1128.

Here, the Settlement Agreement does not dismiss charges against Mr. Buckhanan. In fact, no charges were pending against him. The Settlement Agreement strictly addressed his civil claims, and defendants contend that a valid release or waiver of Mr. Buckhanan's federal and state claims prevents his section 1983 (first and second) and assault and battery (third) causes of action. The import of the deemed admissions is that the Settlement Agreement is a valid release or waiver of Mr. Buckhanan's federal and state claims. Mr. Buckhanan fails to overcome the deemed admissions and to dispute defendants' legal authority that the Settlement Agreement is a valid release and waiver of Mr. Buckhanan's claims. With the Settlement Agreement deemed valid, Mr. Buckhanan's causes of action necessarily fail.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. GRANTS defendants City of Ceres, police chief Art DeWerk and police officer Darren Venn summary judgment;

2. VACATES the May 25, 2005 and October 13, 2005 pretrial conferences and July 6, 2005 and November 28, 2005 trials; and

3. DIRECTS this Court's clerk to enter judgment in favor of defendants City of Ceres, police chief Art DeWerk and police officer Darren Venn and against plaintiff John Wesley Buckhanan and to close this action.

IT IS SO ORDERED.

**Dated:   May 16, 2005**               /s/ Lawrence J. O'Neill
66h44d                                  UNITED STATES MAGISTRATE JUDGE